First case up this morning is 4-15-0-1-5-3, Meier v. Ball. For the appearance of the appellant is Yasmeen Baig, pronounced correctly? And for the appellee is John Doner? Yes. Is that pronounced correctly, sir? Yes, your honor. Thank you, counsel. Ms. Baig, you may proceed. May it please the court, my name is Yasmeen Baig, and I'm here representing Petitioner Dustin Meier. As we said in our briefs, judges, we think registration is and should be a simple and ministerial matter. We know that in the statute, 750 ILCS 36305D, a court should and shall confirm a registered order unless the person contesting registration, in this case the mother, and I'll go ahead and refer to them as mother and father, unless in this case the mother establishes, and we know one of three things, that there was no jurisdiction under the issuing court, in this case would be California, that the order has been vacated, stayed, or modified. Counsel, why doesn't that one apply, that the order has been vacated or modified? Well, the mother brings up two instances where they believe that modification occurred. Well, what I'm referring to is the litigation that was going on, was it the state of Ohio? Yes. What about that? That was the case, judge, where there was pending litigation on the date that this was filed, December the 20th, 2012. That case in Ohio had been vacated. And then the trial court in Ohio corrected what it needed to correct and entered another order, right? Yes, that was later on. But on the date that this was filed, December the 20th, 2012, there was no modification of that California order. But by the time you arrived at the hearing where the mother was contesting it, there had been a modification. Is that accurate? I believe so. I don't have all of the, I don't have the court records from Ohio. I do believe that it was continuing in Ohio. But on the date, like I said, on December the 20th, there was no modification. And we do think that that should be the date that sets the standard for, you know, for 750-ISDS-36-305-D2. Otherwise, it's sort of a case where, well, is it the date where we file the petition or do we wait three weeks out or do we wait until the next hearing? And so I think that would sort of be the cutoff or the date that we should use when determining that. So, and we do think that is the only issue. That number two, whether the order has been vacated or stayed or modified, I think we all agree that in accordance with number one, the State of California had jurisdiction to issue the order. When your client, pro se, filed his petition in December 2012 in Macon County Circuit Court, did he tell the judge in Macon County about any of the litigation in Ohio? On December the 20th? December 20th, yes. I personally When he filed that petition or at any time thereafter when he sought to file the foreign judgment, did he tell the Macon County Court about the Ohio litigation? I don't believe, and correct me if I'm wrong, but I don't believe he made reference to it, I think. Then wasn't this just a lie by omission? I don't think so. I mean, if they Do you think the trial judge in Macon County had any interest in hearing about litigation concerning the same subject, the same child in another state that had gone all the way through the appellate court? That's of no interest? I think he had interest. In fact, he did call over to the judge in Ohio. I'm talking about at the time the matter is first called to his attention. Isn't the failure by your client to mention this to the trial judge in Macon County, at best, lying by omission? I don't think so, and you know, like I said, if I'm wrong, I'm wrong. But I think what we're looking for is not enforcement or modification. We're just looking for registration. So I think in accordance with the fact that he wanted to register the California order in Illinois, if there had been proceedings occurring in Ohio, I think would not have been important or relevant because we weren't at that point, or he wasn't at that point, trying to modify or change or enforce the California order in Illinois. Did your client represent to the trial court in Macon County that he'd lived with L.M. and Decatur since December 2007? Yes. That was a lie, wasn't it? L.M. never resided in Illinois. He was in Illinois because in... Passing through and away from California to Ohio? Well, I believe at the January 18th hearing, he was returned from... Not Decatur, Illinois, but Argenta, Illinois, which is close by in Macon County. How long was he there? He was staying with his father. He was going to school there. In Argenta, Illinois? Yes. He resided in Illinois? Yes. Was that the result of the situation when the father went and picked him up at school, brought him back to Illinois, and then the mother had to involve law enforcement to get him back? At which time? At which date? When he was in Illinois attending school in Argenta. Okay. I think there... And I think both sides disagree on that. I don't know the exact timeline. I do know that he was in Illinois with his father at the time. He was attending the Argenta school. And that at the hearing on the motion to dismiss in January the 18th, I believe, he was... That's when the judge ordered that he be taken from... He be picked up at Argenta school after school by the mother and the sheriff. And that's when he returned back to Ohio. Was that the first time the mother had to involve authorities to get him back? I don't believe so. I believe both sides had been, you know, sort of playing this game, so to speak, over the course of the child's life. But the mother did have custody pursuant to the California order. Is that correct? Well, if that's correct, that's correct. I know there were... You don't think that's correct? Well, according to the 2008 California order, sort of makes reference to the mother's right to visitation. I think it was one week a month. But that was a visitation that she would have when the father had the child, right? Right. She was the custodial parent. I believe so. I believe so. If that's the judgment you want to register, you need to know what it holds. Right. Well, there are three parts to it. There's the 2006, the 2007, and the 2008. And the 2008 judgment makes reference to, it says, any other orders that are not contradicted by those 2008 judgments still hold. Now, in the 2006 and 2007, I believe that there's joint custody, joint legal custody in 2006 and 2007. And I can tell you the page numbers. But that was modified when the mother decided to move to Ohio. That's the order that you were seeking to, your client was seeking to register. And that order indicated that the mother was the custodian and that the dad would have visitation and that Illinois would have jurisdiction. The 2008, Your Honor? The most recent order, the order that you were trying to register. Right. I don't believe that makes reference to the mother having. It does say in the 2008 order, in number four, that it is further agreed that all terms and provisions regarding custody and visitation currently being exercised in the state of California shall now be applied to the state of Ohio. And it discusses the mother having increased visitation with the child, additional visitation periods occurring, one week every month. And that when the mother visits Illinois, she's not to leave Macon County with the child. Thank you. You should continue, yes. Thank you, Judge. Okay. Again, concerning the three defenses that the mother would have in contesting registration in the state of Illinois, another was improper notice that they discussed. And we know that the mother was, in fact, present. She had actual, she had notice in that she was present at the July, June, I'm sorry, January 18th hearing in Decatur, Illinois, in Macon County. She was present with counsel. She had the opportunity to argue and present her side. Thank you. And one of the things that led the judge in Macon County to dismiss or turn over that order from December the 20th was his discussion of jurisdiction and that whether Illinois had jurisdiction. And we know from our brief that jurisdiction is not a defense to registration. And the mother actually makes reference to this on page 18 of their brief, saying that jurisdiction is not a defense to registration. So there's no, we don't need to talk about jurisdiction because it's not a defense. They've had notice. California had jurisdiction. So really, like you said, Judge White, the only thing left was number two, whether it had been vacated, stayed, or modified. And I know another one of the concerns was what the judge said. Let me ask you, counsel, let's get back to the notice issue. Okay. Didn't your client represent and the court adopted that notice was not necessary because the parties had allowed Illinois to assume jurisdiction, so there was no actual notice sent to the mother. Is that correct? Correct. Correct. But again, like I said, she was present, they did know about it, and they had the opportunity to contest in January of 2013. So again, regarding modification, there was the concern regarding the judge's comments in Macon County back in December. And we'd like to clarify that there was no, any statement made by the judge that might be considered as modification, we don't think was actually modification. There was no request for modification. There was only request for registration of the order. No request, no prayer, no intent to modify by the father or by the court, we think. It was merely, the court itself was merely stating what it believed to be true. As presented in the father's pro se petition that was not prepared by our office, regarding both jurisdiction and custody of the child. Again, looking to grounds for modification in Ohio, and like I said before, we think that we look to the date of the request, which was December the 20th of 2012, because that's the most efficient way to do it. Otherwise, we would be sort of waiting to see what would happen. And all we wanted to do was register. So even if there were, you know, if there was grounds for modifying in another state, that doesn't mean we can't register in Illinois in the meantime. We're only asking for registration. We don't think it will frustrate or negatively affect proceedings in Ohio or in any other state. I think once we get to the point if and when we want to enforce and or modify, that's the time that the court can consider the proceedings in Ohio at that time, not at the time that we're looking just to register. Why should the Illinois courts be concerned with this case at all, given the extensive involvement of the Ohio courts? Because connection to Illinois, Your Honor, our client, the father is, he resides in Illinois. There's a connection to Illinois. I know he's been to Ohio. Well, he could have moved to Tennessee and say, I want to register the case there. We have the Ohio courts actively involved. Your client actively participated all the way through the appellate process. Right. Why shouldn't the Illinois courts simply defer to the Ohio courts? Because if he wants to be in Illinois and he wants the, you know, the Illinois court system to, he wants to use the Illinois court system. If he's staying in Illinois and he wants a child to stay with him, then he would want to use the Illinois courts. What is it in this order that he wants to register? In the California order, Your Honor? Yes. What is it in that order that says that he's the custodian? He, it doesn't necessarily say he's the custodian, but it makes reference to the visitation agreement and... So you're representing today, not your client, but you, you're representing to the court that that stipulation that followed somehow changed custody and because it refers to respondent having visitation, that somehow changed who the legal custodian was? No, no. Not necessarily. And if that... Well, it dropped the not necessarily. Okay. The question is, when this child left California, who was the physical, who was the residential custodian of this child? Well, it would seem, according to my research and looking into the three orders put together, it would seem that they would have joint legal custody. Who did the child live with when the child left California? It should have been, I believe, the mother. Well, the initial custody order was issued in 2006. Yes. And maybe this is what you're referring to, where they were granted joint legal custody, but even then the mother was primary residential custodian, correct? Yes. And then a second order was issued December 19th of 2007, and the mother remained the primary residential custodian, correct? Yes. And then on July 18th of 2008, they entered into a stipulation saying the mother was going to move to Ohio and that she could do that. And the order basically said that all prior orders that don't conflict with this stipulation will still remain in effect. So wouldn't it be true to say that that means the mother remained the primary residential custodian? Yes. But then your client came to Illinois and misrepresented that to the court. Well, and that may be true. He was working with our office at that time. I said your client. I did not say your office. But your client misrepresented that and implied, if not outright lied, to make the court believe that he was the custodial parent. Right. And I can't speak to whether he deliberately misrepresented, whether he misunderstood. Does it matter? Right. Whether what his motives were, we can guess. But the fundamental point is the trial court was misinformed. Right. And then I suspect the judge, upon discovering that, didn't like it and vacated the order, which was based upon the misinformation it received. What's the problem with the judge doing that? Well, it seems like the judge, Your Honor, in Macon County, looked more to jurisdiction. And while we do think, you know, our client, and like you said, he may have misrepresented or what his motives were or what he said was not entirely correct, but that doesn't mean that he didn't try to hide the 2006 and 2007 orders. He provided the 2008 order. It made reference to any other order, you know, still being in effect. They are available in the record. You know, I'm not making excuses for him, but we still don't think that that would be a defense or a reason to not sue. Counsel, all three of us were trial judges for extensive periods of time. I don't mean to speak for my colleagues, but I can tell you that when I was a trial judge, your client would have been in jail for contempt, for purposefully misleading the court and failing to tell anyone about the litigation in Ohio. That is editorial commentary because it doesn't apply now, but you should understand that. Okay. Which puts his posture in the difficult one when he's asking this court to reverse the trial judge. Right. We're not sympathetic. Okay. Do you have anything further, Counsel? Just that, Your Honors, I understand what your opinion of my client is. May I go ahead and finish my thought? Go ahead. I'll let you finish. Thank you. I understand what your opinion of my client is and that he may not have been forthright with what he said to the trial court, but we don't think that that's a reason to not simply register. Again, we're not looking for enforcement or modification, but we don't think, like I said, that it shouldn't have been registered. Okay. Thank you, Counsel. Thank you, Judge. Mr. Donor. In place of court, my name is John Donor. Counsel. I'm an Ohio lawyer representing Laramie Ball in these proceedings, the appellee and trial court defendant. To answer some of the questions that were raised on the appellant's argument, this was the mother had to use authorities to get the return of the child two times. I've been representing her since March of 2010 and April of 2010. She went to the Summit County, Ohio juvenile court and had to get rid of habeas corpus to have the child returned to her. She had to use the authorities in Macon County, the Sheriff's Department, to get the child in January of this year. Another question was raised. The child was enrolled in school beginning in the fall of 2010 in Macedonia, Ohio, halfway between Akron and Cleveland. He went to a Head Start program. Then he entered kindergarten for the 2011-2012 year. And for 2012-2013, he was at that elementary school in Ohio attending first grade. On December 20th, the child was still in Ohio when Mr. Meyer filed all these things. But on December 21st, Mr. Meyer came, picked up the child, brought him to Illinois, enrolled him in the Argenta schools, and it was from that school that day on January 18th that the child was returned. I'd like to make five points if I can. I'll try to be brief with those. Four were covered in the brief, but there's one I think that will be important for the court's decision also that I will add. The first one, and the court has already touched on this, if Mr. Meyer did not lie, we would not be here today. There were three California orders. He only attempted to use one. He doesn't want the court to pay attention to the first or second page of the 2008 order, only the third page, which talks about visitation for my client when the child would be here. Mr. Meyer never followed that order anyhow. He moved in 2008 to Ohio four different times before the courts. He has submitted affidavits in Ohio required under the UCC JEA saying that the child has resided in Ohio and in fact saying he has resided in Ohio since at least December of 2008. But there are three California orders. That was the first misrepresentation. He also said, under penalty of perjury, state that the order has not been modified. That's an absolute lie. The order at that time, when he made that statement, had been modified two times. Now, I was in court last week in Ohio on this case. Mr. Meyer was there, his counsel was there. We're still fighting in Ohio. It's an ongoing proceeding. And his attorney didn't quite understand. There had been two orders in Ohio, a July 21, 2010 order that accepted jurisdiction, registered three orders from California, modified those orders because they were on a collision course with reality. They only were good until the child was going to enter school. Changed the visitation schedule. Parties lived by that order for the next year until the following order came out. Mr. Meyer did not file any motion to set aside any objections, any appeal of that order. That order stayed in place, and the parties followed that order. The 2011 order is the one Mr. Meyer appealed, and when the Ohio appellate court in December of last year reversed and remanded, did not vacate or dismiss the case, but reversed and remanded for a technical error, it also said Ohio has jurisdiction. That is the court that it belongs. And not telling the court in Macon County is a lie by omission. Mr. Meyer said he was domiciled with the child in Illinois since approximately May 5, 2007. That is an absolute lie. Mr. Meyer, in fact, had not been to the state of Illinois between probably October, September or October of 2011 until December of 2012. Hadn't even visited the state, and then took the child to live with his parents when he was older. Mr. Meyer stated that he has sole physical custody of the minor child. There is not any order that ever gave him custody except the order he prepared and submitted in Macon County. This is the ninth proceeding in seven courts in three states concerning this child in custody. And none of the courts, except for this one order that lasted less than a month in Macon County, gave Mr. Meyer custody. He says that mother was awarded visitation every other weekend. That's a misrepresentation. That was only for the summer when he was to have the child. He said the Macon County visitation for her had to happen in Macon County as a child abduction prevention measure. That is pure fiction. There's never any finding in California. There's nothing that deals with that. That is just made up. He does not know of any pending proceedings, pending in accordance with the UCCJEA. That's what he puts in his complaint. He doesn't know of any pending proceedings. The Ohio proceedings were pending. And pursuant to foreign judgment, the child is to reside with Mr. Meyer. He should not be rewarded for these kind of assertions and these kind of lies before that court. That's my first point. The second point, and I think I've already made it, is that the order was modified. It was modified twice. And he's only concerned about, well, I guess in the parlance of the old-time movies, he tried to pull a fast one. He said, well, they vacated the or they reversed the July 2011 order. Maybe I can get to Illinois and try to get the case there. That's not correct, counsel. He succeeded in pulling a fast one. Yes, he did. In between December 20th, when he approached the court in Macon County, and the hearing on January 18th, the court in Ohio modified the order four more times. And Mr. Meyer was aware of that, that by the time we were in court in front of Judge Correale, the order in Ohio had been modified six times. There was no notification or service of his petition. He couldn't have succeeded in getting this order that says he has custody with strict limitations on how my client would see this child if she was able to speak to the court. It had to be done. If the misstatements and the lies to the court were going to succeed for him in getting this order, he couldn't have opposition. He did not serve her. Failure to have notice of these proceedings and service of the petition is a ground for dismissal of a registration. It doesn't provide in the UCCJEA that if the hearing is then held and somehow the person not notified has waived that, that is omitted. If you don't serve and you don't notify the person of the petition, then it's dismissed. It's not as draconian as it seems because you get to do a do-over, you get to do a start-over. He can re-register it and file it, but he couldn't have that happen because the cat was out of the bag by that point in time. He needed it to happen in quick order. If his theory was correct, that there was no modification because the one order had gone up to appeal and it had been reversed and remanded, then before the trial court corrected the entry and reissued the decision, which happened on December 26th, he had to have this happen. He had to have that rapid fire. It had to happen for him. Mr. Meyer prepares the entry. He gets local counsel to walk it through for him, and the entry that the court entered, registered the order, confirmed the registration, assumed exclusive and continuing jurisdiction, no pro-tunk ab initio. I'll never forget this phrase. It's the first time I've heard them combined. Effective July 21st, 2008. I don't know what happened on July 21st, 2008, but I know what didn't happen. Mr. Meyer did not come before the court in Illinois. He did not come before the court in Illinois until December 2012. But ab initio, from the beginning, and apparently that's Mr. Meyer's definition of the beginning, modified the existing order by awarding custody to Mr. Meyer, restricted Ms. Ball to seeing the child in Macon County. The court lacked jurisdiction to do that. And those were all jurisdictional. Most of those were jurisdictional changes. It was something that I'm sure the trial judge saw when he vacated and dismissed the case. The red herring that is in the briefs really hasn't been addressed, but I'll address it briefly. This is the fourth point I'll make, is the alleged failure of the Illinois court to record the conversation with the trial judge in Ohio. First of all, there doesn't have to be a recording for what they spoke of, and what the trial judge said was only procedural matters and matters of record, and they were not talking of the substance of the case. They're arguing that there's an incomplete record, but there isn't. I mean, there doesn't have to be a recording of that. But if there was, it's up to the appellant to bring the record to the court. And I'll just throw this out. This is a different way of thinking, but it's what happened. There was never a request in Macon County for the courts to talk because, as the appellant has said, jurisdiction was not the issue that was raised by Mr. Meyer. Nobody ever asked the trial judge in Macon County to call the judge in Ohio. But on January 3rd, I filed on behalf of Mrs. Ball in Ohio a request to have the child returned to Ohio under the UCCJEA, and because now jurisdiction was an issue in Ohio in those proceedings, I had asked that court a formal request as part of that motion on January 3rd to call the court in Macon County.  If there is a record, if a record is needed, it doesn't have to be in both courts. It can be in one court. And nobody has checked with the Summit County, Ohio court to see if there's any record of any proceedings or to verify if it needs to be that there is anything but what Judge Coryell stated in the record, the substance of his conversation with the judge. The fifth point I will make and the last point I will make is I believe these proceedings are moot. The order has been modified five times now since December 26, 2012, California orders. Mr. Meyer has new counsel in Ohio. In February, Mr. Meyer appeared in court trying to get an ex parte communication with the court, hired local counsel. His local counsel has filed motions in that court. Mr. Meyer voluntarily appeared on March 21st for me to take his deposition under the Ohio court order. There was a hearing on April 10th and Mr. Meyer's motion to modify the existing order in Ohio. We were in court last Monday, June 10th. Mr. Meyer was present, Laramie Ball was present, Mr. Meyer's counsel, and I was present, arguing again whether the order, now in existence in Ohio, should be modified. He's twice requested the modification of the orders. He's twice had hearings on that. Another hearing will be set after July when the expected result from this court will come out. There are sufficient grounds to uphold the decision of the trial court, and we would ask as much as I have enjoyed coming to Illinois, especially this time, that the court uphold the decision of the trial court. Okay. Thank you, counsel. Ms. Bey, any rebuttal? Yes, Your Honor. Okay. Again, Your Honors, I wanted to bring up, the defendant has made reference to attempts to modify past modifications of the order in Ohio. Again, I wanted to reiterate the date that I think we should look to, which was the December 2012 date, the time at which there was no modification in Ohio because it had been reversed at that time. Counsel, what about opposing counsel's representation that it had been modified prior to that date? What we're aware of is what went up on appeal, but according to your opposing counsel, it had been modified. It had been modified but then reversed. I think he's referring to a different modification. The one that was reversed was a modification that was appealed and reversed on a technicality, but he represented aside from that modification, there had been a prior modification that was in effect at the time that your client filed the pro se motion to enroll. Okay. I don't have specific information on that particular modification. I can do a supplemental memo if you would like me to, and if that's true, that's true. But as far as what our client represented and as far as what we knew and what we know, whatever modifications existed or were passed in Ohio, we thought had been reversed at the time. Again, counsel sort of makes reference to the father's plan to proceed in December 2012 without mother present, thinking that he would only be able to get it passed or get it registered in Illinois without the mother present. And I don't necessarily think that's true. I mean, he knew that everything would be on the record. He knew that mother would get access to the Illinois order, and he knew that there was a potential for a motion to dismiss to come forward. So I don't necessarily think that he was trying to fool the court in that regard, because everything was on the record at that time, and there was a chance for a hearing in January. And I think in terms of notice and service, again, he believed that he was able to go ahead and have it registered in December, and he believed that he could have it registered in December, and she, the mother, received enough notice to be able to file the petition, to file their motion at the beginning of January 2013, and to attend and participate in the hearing on January the 18th. Counsel, have you met Mr. Meyer? Yes. And that is all I have on rebuttal. Thank you. Thank you, Counsel. Thank you, Samantha, for your advisement. May it be so for a few moments.